UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RYAN SHAVE | CASE NO. 1:12CV2692 |
| Plaintiff | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | |
| Defendant. | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Ryan Shave Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his March 9, 2011 decision in finding that Plaintiff was not disabled because he did not demonstrate that he satisfied all of the requirements of Listing 12.05C pertaining to mental retardation. The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.    PROCEDURAL HISTORY**

Plaintiff applied for SSI on February 20, 2009, alleging disability since April 20, 1990 due to a ADHD, diabetes, and high blood pressure (Tr. 121, 293). His application was denied initially and on reconsideration (Tr. 69-70). An ALJ held a hearing on March 4, 2011, at which Plaintiff, who was represented by counsel, and a vocational expert testified (Tr. 30-66). On March 9, 2011, the ALJ

issued a decision, find that Plaintiff was capable of performing a significant number of jobs in the national economy, and, therefore, was not disabled under the Act (Tr. 9-23). The Appeals Council denied Plaintiff's request to review the ALJ's decision, making it the final decision of the Commissioner (Tr. 1-4). Plaintiff has now requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 1383(C).

**II.      STATEMENT OF FACTS**

Plaintiff was born on April 24, 1990, and was eighteen years old on the date of his SSI application (Tr. 121), making him a "younger" individual under the regulations. He graduated from high school and was in special education classes (Tr. 38). It was determined by the Administration that the Plaintiff did not have any past relevant work (Tr. 21).

**III.     SUMMARY OF MEDICAL EVIDENCE**

During a May 2007 consultative examination, two years prior to Plaintiff's SSI application, Deborah Koricke, Ph.D. noted that Plaintiff had a good appearance, initiated conversation, and was clean, neat, "very pleasant," personable, and cooperative (Tr. 382). Dr. Koricke reported that Plaintiff had no difficulty understanding simple directives and/or questions and responded appropriately, although he frequently needed to have questions repeated to him (Tr. 383). Dr. Koricke noted that Plaintiff's achievement in math computation was "significantly higher" than his IQ scores would indicate (Tr. 384). Dr. Koricke further stated that Plaintiff was operating "within normal limits for his age level in daily living skills" (Tr. 384). Despite assessing Plaintiff's verbal IQ at 73, performance IQ at 68, and full scale IQ at 68, Dr. Koricke diagnosed Plaintiff with borderline

2

intellectual functioning, not mental retardation (Tr. 384). Dr. Koricke explained that Plaintiff's performance was "viewed as an under representation of his intellectual ability and adaptive functioning. Thus, he is estimated to be functioning within the borderline range of intellectual ability" (Tr. 385).

At a November 20, 2007 consultative examination with Dariush Saghafi, M.D., Plaintiff was able to lift, push, pull, bend, walk, stand, and travel independently without limitation (Tr. 416).

In March 2009, Plaintiff was noted to have low blood sugar and poorly controlled diabetes, but no functional limitations (Tr. 474-75).

At an initial behavioral health appointment in April 2009, Plaintiff reported some disruptive behavior due to ADHD (Tr. 587-89). He was prescribed Ritalin, and, ten days later, was noted to be improving, making up some of his school work, and having no other problems (Tr. 590).

In August 2009, Jeffrey Halpert, D.P.M., who treated Plaintiff's ingrown toenails, indicated that Plaintiff had no limitations on work activity, despite uncontrolled diabetes (Tr. 590).

Plaintiff's final IEP indicated that he displayed appropriate living skills independently (Tr. 735).

In September 2010, neurologist Augusto Juguilon, M.D. indicated that Plaintiff's memory problems were helped with medication (Tr. 709).

## IV.    **SUMMARY OF TESTIMONY**

At the hearing, Plaintiff testified to being in special education classes since kindergarten (Tr 38, 40). He stated that he has applied for a few jobs, and believed he could perform them if allowed extra time, but was not hired (Tr. 40). He identified himself as "a little slow," needing to re-read things two or three times and using a calculator for math (Tr. 40, 42, 47). Plaintiff testified that he

3

attempted to obtain a driver's license, but twice failed the test (Tr. 38). He receives help with his homework from his mother or brother (Tr. 44). He stated that his memory is "not that great," and that he receives medications specifically for this issue (Tr. 48). With regard to his diabetes, he said he was not having problems (Tr. 43). However, Plaintiff reported that he had an insulin pump for his diabetes, but it was recently removed, due to lack of insurance (Tr. 55). However, Plaintiff also stated that he had tried to obtain work through the Department of Vocational Rehabilitation, but that they told him it was too late in the year to begin, and that he should try again the following summer (Tr. 46).

Thereafter, the vocational expert testified based upon a description of a hypothetical individual of Plaintiff's age, education, and work experience, who has no exertional limitations, but is restricted to the performance of simple routine and repetitive tasks, and may have only occasional interaction with the general public and occasional interaction with co-workers. With these limitations, the vocational expert stated that such an individual could work as a kitchen helper, which is medium work and unskilled, with 1,100 jobs in northeast Ohio and 130,000 jobs nationally (Tr. 63).

In response to another hypothetical question, the vocational expert responded that if someone needed to be refocused to a task more than a third of the time during the day, work would be precluded for sustainability (Tr. 62). In further questioning, the vocational expert responded that a hypothetical person becoming easily frustrated, occasionally to frequently during the workday, needing to be calmed down by a supervisor, would also preclude work (Tr. 63).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

4

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. 404.1520© and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

### **VI.** **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g).

5

Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

### **VII.** **ANALYSIS**

Plaintiff raises two issues:

A. Whether the Administrative Law Judge erred in determining that Plaintiff does not have a valid verbal, performance, or full scale IQ of 60-70 consistent with Listing 12.05(C).

B. Whether Plaintiff's diabetes mellitus and ADHD impose additional and significant work-related limitations that meet the criteria for Listing 12.05(C).

The undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet Listing 12.05C. 20 C.F.R. pt. 404, subpt. P., app. 1. The Listings are a regulatory device that identifies those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). To be found disabled, a claimant must show that <u>all</u> of the criteria for a listing have been met. 20 C.F.R. Section 416.925(c)(3); *Zebley*, 493 U.S. at 530. An impairment that meets only some

of the criteria for a listed impairment, "no matter how severely, does not qualify." *Zebley,* 493 U.S. at 530. It is a claimant's burden to present evidence that an impairment or combination of impairments meets a listed impairment by presenting medical findings meeting all of the criteria of the listed impairment. 20 C.F.R. Section 416.926; *Zebley,* 493 U.S. at 531.

In order to meet Listing 12.05C, Plaintiff must demonstrate: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested before age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00(A). Section 12.05 of the Listings (mental retardation) is different than that of the other mental disorders listings. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00(A). Specifically, a claimant seeking to establish that he is disabled under Listing 12.05C must satisfy the definition of Section 12.05, along with the other two criteria set forth in paragraph C. Soc. Sec. Acquiescence Rul. 03-1(7), 68 Fed. Reg. 74, 279, 280 (Dec. 23, 2003).

Plaintiff has not claimed or argued that he has the requisite deficits in adaptive functioning. Hence, he has not met all of the requirements of Listing 12.05C.

The Plaintiff has not provided evidence to prove deficits in adaptive functioning. The *Diagnostic and Statistical Manual of Mental Disorders*, 4th edition (*DSM-IV)*, defines "adaptive functioning as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV-TR)* 42 (4th ed., text rev., 2000). The Regulations indicate that IQ scores are "only part" of the overall assessment, and that the narrative report of the examining psychologist is critical

for examining developmental history and the degree of functional limitation. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00(D)(6)(a). The *DSM-IV* provides that "[i]mpairments in adaptive functioning, rather than a low IQ, are usually the presenting symptoms in individuals with Mental Retardation." *DSM-IV-TR* at 42. The DSM-IV directs that a clinician will "not diagnose Mental Retardation in an individual with an IQ lower than seventy if there are no significant deficits or impairments in adaptive functioning." *DSM-IV-TR* at 42.

Documenting IQ scores prior to age twenty-two does not prove deficits in adaptive functioning prior to age twenty-two. *See, Witt v. Barnhart*, 446 F. Supp. 2d 886, 896 (N.D. Ill. 2006). Therefore, IQ scores alone are not dispositive in determining whether an individual suffers from deficits in adaptive functioning beginning in childhood.

In this case, Dr. Koricke indicated that Plaintiff's performance was "viewed as an under representation of his intellectual ability and adaptive functioning. Thus, he estimated Plaintiff to be functioning within the borderline range of intellectual ability" (Tr. 385). "By definition, an individual with borderline functioning [does] not have deficits in adaptive functioning manifested during the development period." *Harris v. Comm'r of Soc Sec.,* 330 F. App'x 813, 816 (11th Cir. May 22, 2009) (unpublished) (substantial evidence supports an ALJ's finding that a claimant does not meet Listing 12.05 when the claimant was only diagnosed with borderline intellectual functioning; *Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 126 (6th Cir. 2003) upholding the ALJ's decision where an examining psychologist found that the claimant "was actually operating within the borderline range of intellectual functioning, although her intelligence test scores, standing alone, would indicate mental retardation"). In addition, Dr. Koricke stated that Plaintiff was operating "within normal limits for his age level in daily living skills" (Tr. 384). Plaintiffs final IEP indicated that he displayed independent appropriate living skills (Tr. 735).

Since Plaintiff has not proven how he satisfied the requirement to demonstrate deficits in adaptive functioning, this Court finds his argument lacks support in the record. The validity of a claimant's IQ test scores is irrelevant if an ALJ determines that, even considering such scores, the claimant does not meet the diagnostic description set forth in the introductory paragraph of Listing Section 12.05 . *Courter v. Comm'r of Soc. Sec.,* 479 F. App'x 713, 721-22 (6th Cir. 2012); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007). ("Yet, it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05.

Plaintiff also asserts that the ALJ erred by questioning the validity of Plaintiff's IQ scores (Pl.'s Br. at 8-11). However, an ALJ may reject IQ scores that are contrary to substantial evidence. *See, Courter,* 479 F. App'x at 721 (citing *Cruse v. Comm;r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)). In addition, a diagnosis of borderline intellectual functioning in lieu of a diagnosis of mental retardation is also evidence of an invalid IQ score. *Brooks v. Astrue*, 2010 WL 1254323, at *8 (N.D. Oh. Mar. 14, 2010).

In this case, Dr. Koricke, who administered Plaintiff's IQ testing, emphasized that Plaintiff's performance was "viewed as an under representation of his intellectual ability and adaptive functioning," and estimated that Plaintiff was functioning within the borderline range of intellectual ability" (Tr. 385). *See, Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003). Therefore, the ALJ correctly questioned the validity of Plaintiff's IQ score of 68.

Furthermore, the ALJ correctly found that Plaintiff's ADHD and diabetes did not impose additional and work-related limitations of function. The ALJ was correct "by assuming that Plaintiff was required to show additional <u>severe</u> impairments in order to demonstrate "additional and significant work-related limitation of function," as required by Listing 12.05C. Based upon substantial

9

evidence, the ALJ correctly found that neither impairment imposed any "additional and significant work-related limitation of function" (Tr. 18). As the ALJ determined with respect to Plaintiff's ADHD, the record revealed that Plaintiff could perform simple, routine, and repetitive tasks; his performance in school "dramatically improved" with medication; he exhibited only "mild attention deficits" during his examination with Dr. Koricke; his mother confirmed that his behavior improved with medication; and Plaintiff testified at the administrative hearing that his doctor took him off his ADHD medication, because his doctor concluded it "wasn't needed" any longer (Tr. 15, 19, 52-53, 372, 383, 480). In regard to Plaintiff's diabetes, the record showed that, although he occasionally required treatment for ingrown toenails, he was able to stand and walk normally with normal gait and motor strength, and had no significant retinopathy or neuropathy (Tr. 14-15, 317). Furthermore, Plaintiff testified that he had no problems due to diabetes (Tr. 43).

Plaintiff points to no specific functional limitation from either impairment that would satisfy the requirement of the Listing. Hence, his argument is not supported by substantial evidence, since Plaintiff only contests the Administrative Law Judge's (ALJ) determination that his condition did not meet Listing 12.05C, pertaining to mental retardation. Plaintiff has failed to meet his burden to prove that he was disabled during the relevant period by substantial evidence, particularly because he made no effort to demonstrate that he satisfied all of the requirements of the Listing. Therefore, since substantial evidence supports the Commissioner's decision, this Court affirms the Commissioner's decision.

## VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional

capacity (RFC) to perform a full range of work at all exertional levels, but with certain non-exertional limitations, and, therefore, was not disabled.  Hence, he is not entitled to SSI.


Dated: April 9, 2013                                                          */s/George J. Limbert*
                                                                                             GEORGE J. LIMBERT
                                                                                             UNITED STATES MAGISTRATE JUDGE